GLEASON et al. v. DUFFY et al.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 840.

1. SHIPPING—PROCEEDINGS FOR LIMITATION OF LIABILITY—JURISDICTION.

A proceeding by a shipowner for limitation of liability under Rev. St. § 4283 et seq., as amended by 24 Stat. c. 421, and under the admiralty rules, may be brought in the district court for any district in which said owner may be sued in that behalf, on payment into court of, or stipulation to pay, the appraised value of the vessel, or upon the transfer of his interest to a trustee; and the presence of the vessel within the district is not essential to the court's jurisdiction.[1]

2. SAME—ESTOPPEL TO MAINTAIN PROCEEDINGS—JUDGMENT IN PERSONAM IN STATE COURT.

A shipowner is not estopped by a judgment in personam rendered against him by a state court for damages sustained in a collision from thereafter instituting proceedings in a court of admiralty for a limitation of his liability in respect to such damages under the statutes of the United States, although in such proceeding the fact of liability and the amount of damages sustained by the injured party are matters rendered res judicata by the former judgment.

3. SAME—LACHES—CONDITIONS TO GRANTING OF RELIEF.

Nor is the shipowner debarred by laches from maintaining such proceeding because the same was not instituted until after he had prosecuted an appeal from the judgment for damages, and the same had been affirmed, nor by the fact that he gave a supersedeas bond, as required by statute, to enable him to safely present his contention to the appellate court; but where there has been such delay he should be required, as a condition to the granting of the relief prayed for, to pay the costs adjudged against him in the state courts, which might have been, to a large extent, avoided by his more timely action.

Appeal from the District Court of the United States for the District of Indiana. In Admiralty.

The appellant John Gleason, one of the crew of the steamboat Transit, on the 22d day of December, 1896, received an injury through a collision between the Transit and tugboat Aid upon the Ohio river, and at the port of Louisville. On May 5, 1897, he brought a common-law action in the circuit court for the county of Clark, Ind., against Duffy and Hoffman, the appellees, owners of the steam tugboat Aid, to recover damages therefor. The claimant appeared to that action, denied liability, and also an-

---

[1] Limitation of shipowner's liability, see note to The Longfellow, 45 C. C. A. 387.

swered, claiming the benefit of the limitation of liability under the statutes of the United States. On June 24, 1899, judgment in that cause was rendered against Duffy and Hoffman for $2,000, with costs; the claim for limitation of liability being refused and rejected by the court. They appealed therefrom to the appellate court for the state of Indiana, giving bond, with surety, conditioned that they should prosecute their appeal, and abide by and pay the judgment and costs which might be rendered and affirmed against them by the appellate court. On November 27, 1900, the judgment of the circuit court for the county of Clark was by the appellate court in all things affirmed. 58 N. E. 729. The bond operated as a supersedeas. Thereafter, on the 23d of January, 1901, Duffy and Hoffman filed their petition in the district court of the United States for the district of Indiana against Gleason to limit their liability under the act of congress; setting forth the facts stated, and asserting, among other things, that the injury was not caused by the negligence of the petitioners, who were not present at the time, and occurred without their privity or knowledge, and without fault or negligence on their part; that the Aid is a vessel of eight tons burthen, duly enrolled according to law in the office of the supervising inspector of steamboats of the United States for the Sixth supervising district, which includes the ports of Jeffersonville, in the state of Indiana, and Louisville, in the state of Kentucky, and the waters of the Ohio river; that the vessel is now in the port of Jeffersonville, in the district of Indiana, and within the jurisdiction of the district court, and is engaged in plying between that port and the port of Louisville and adjacent places, and is used as a tug and tow boat in interstate commerce upon the Ohio river; that they interposed in the state court to contest their liability and the liability of the steamboat, and desired at all times to claim the benefit of the limitation of liability provided for in sections 4282 and 4289 of the Revised Statutes, as amended; that the claim for damages made by Gleason, and the judgment recovered and affirmed, exceed in amount the value of the steam tugboat Aid at the time of the accident, and exceed the several interests of the petitioners therein; and charges that the vessel at the time had no freight, and her value, including tackle, apparel, and furniture, did not exceed the sum of $600. The petition calls for an appraisement of the value of the interest of the petitioners in the steamboat; that they be permitted to pay the amount into court, and that Gleason, Douglas, and Phipps,—the latter two of whom are charged to have, as attorneys, a lien upon the judgment,—may be cited to answer, and that upon such appraisement, and payment into court of the value, the amount may be divided among the respondents in proportion of their interests; and that the respondents be severally enjoined from prosecuting and collecting the judgment in the state courts by suit upon the bond or otherwise. Thereafter, on January 31, 1901, Gleason brought his action in the circuit court for the county of Clark, Ind., against Duffy and Hoffman, and against Howard, the surety, to enforce the penalty of the appeal bond, which fact was brought to the attention of the court by an amendment to the petition. The said Gleason answered to the petition, reciting that the petitioners should be held estopped by the judgment of the state court from further contesting their liability and the liability of the vessel, and from asserting any claim on their part to the benefit of limitation of liability of vessel owners as provided by statute, and asserted their failure to take appropriate proceedings for the limitation of liability during the progress of the cause in the state court. He also challenged the jurisdiction of the admiralty court upon the ground that the matters contained in the libel were not matters of admiralty and maritime jurisdiction, but not otherwise contesting the facts averred. The answers of Douglas and Phipps asserted a lien upon the judgment, and challenged the jurisdiction of the court. Exceptions were filed to the answer of Gleason for insufficiency, which exceptions were sustained by the court. Afterwards, on July 11, 1901, Gleason electing to stand upon this answer and declining to make further answer, the court decreed for the petitioners; finding the value of the steam tugboat Aid at the time of the accident to be $650; that the amount has been duly paid into court by the petitioners; and declared and limited the liability of

the owners to the sum of $650; and declared that such payment Into court be in full compensation of their limited liability; and they were discharged from all other or further liability; perpetually enjoined and restrained the appellants from bringing or prosecuting any suit or from collecting any judgment against Duffy and Hoffman for the injury suffered by Gleason, and from prosecuting the suit upon the appeal bond; and directed that the lien of the attorneys follow the proceeds into the registry of the court, reserving to the appellants the right to determine their respective liens upon the proceeds as between themselves. From this decree the appeal is prosecuted.

Wm. V. Rooker, for appellants.

Chas. L. Jewett, for appellees.

Before JENKINS and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). By the general maritime law of Europe the liability of owners for the wrongful acts of the master is limited to their interest in the ship, and by abandoning the ship and freight to the creditor they discharge themselves from all personal liability. The Rebecca, 1 Ware, 188, Fed. Cas. No. 11,619. The rule was for the encouragement of shipping, and was adopted in this country by Rev. St. §§ 4282–4287. The rule was limited to seagoing vessels. The act of 1886 (24 Stat. c. 421, § 4) extended the rule to all vessels used on lakes or rivers or in inland navigation. Section 4283, Rev. St., provides that "the liability of the owner of any vessel for * * * any loss, damage or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture done, occasioned or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending." This statute is an express limitation upon the liability of the owner, and was designed "to modify the shipowners' common-law liability for everything but the act of God and the king's enemies." Walker v. Transportation Co., 3 Wall. 150, 18 L. Ed. 172. The supreme court adopted rules of practice to effectuate the purpose of the statute. 13 Wall. xii, 20 L. Ed. 926. It is therein provided with respect to the court in which the proceedings may be had as follows:

"The said libel or petition shall be filed and the said proceedings had in any district court of the United States in which said ship or vessel may be libeled to answer for any such embezzlement, loss, destruction, damage or injury; or if the said ship or vessel be not libeled, then in the district court for any district in which the said owner or owners may be sued in that behalf. If the ship have already been libeled and sold, the proceeds shall represent the same for the purposes of these rules."

It was suggested at the bar that the district court of Indiana could not rightfully entertain jurisdiction of this proceeding, because, as it was said, it had no admiralty jurisdiction over the Ohio river, for the reason that that stream lies wholly within the state of Kentucky. This contention runs far afield. Under the statute the liability of the owner of a vessel may be limited by any court of competent jurisdiction. The proceeding may be had upon payment into court of, or upon stipulation to pay, the appraised value of the vessel, or, without appraisement, at the election of the owner, upon the transfer by him of his interest in the vessel to a trustee appointed by the court, "from and after which

transfer all claims and proceedings against the owner shall cease." By the rule, in case the vessel be not libeled by the claimant, the proceeding may be brought in the district court for any district in which the owner is sued. The presence of the vessel within the jurisdiction of the court is not essential to jurisdiction over the proceeding. The territorial locality of the Ohio river is therefore not relevant to the question of jurisdiction here. The proceeding was properly brought within the district of Indiana, in which the owners were sued in that behalf.

Without question, the state court had jurisdiction to render the judgment in the action brought by Gleason against the appellees. With respect to suits in personam for injuries upon navigable waters, the statute expressly reserves to suitors the right of a common-law remedy. Schoonmaker v. Gilmore, 102 U. S. 118, 26 L. Ed. 95. Does the judgment rendered in the state court estop the appellees to maintain the proceeding to limit liability? We think not. The right to a common-law remedy may be invoked either in the federal or in the state courts, but, whether in the one or in the other, is subject to the right of the owner of the vessel to seek limitation of his liability: and that can only be done in a court of admiralty. The judgment is conclusive between the parties upon the question of liability for the injury sustained, and the amount of damages suffered. Because of the estoppel of the judgment, the owners of the vessel causing the injury cannot in the proceeding to limit liability further contest liability for the injury, or question the quantum of damages sustained by the plaintiff. Both these questions are concluded by the judgment. The owners, however, are not estopped to claim the protection of the law which limits that liability, if the proceeding be timely. They have right to contest liability either in the action in personam, or upon libel against the vessel, if one be filed, or in the proceeding to limit their liability. But disputing liability in the action in personam, they are estopped by the judgment to deny it here. But there is still open the right or privilege to limit that liability by proper proceeding under the act of congress.

It is also objected that resort to the proceeding to limit liability is not available after the rendition of a judgment at common law. This suggestion of laches is not without merit, and is deserving of consideration. It would seem fitting that the proceeding to limit liability should be seasonably instituted upon commencement of adversary proceedings in a court of law, since both the question of liability and its extent can be therein determined. There is a suggestion to that effect in Transportation Co. v. Wright, 13 Wall. 104, 20 L. Ed. 585. But the question of time was not there involved. We think, however, that the question is set at rest by the decision in The Benefactor, 103 U. S. 239, 26 L. Ed. 351. There a libel was filed in admiralty for a collision, which proceeded to a decree adjudging fault, and the damages sustained by the libelants and interveners were assessed at an amount aggregating over $60,000. A decree was rendered against the claimants, upon their stipulation, for costs and for $40,000,—the amount of the stipulation for the appraised value of the vessel. From this decree an appeal was taken to the circuit court. Pending that ap-

peal the claimants filed their petition in the district court to limit their liability under the statute. It was objected that the proceeding was taken too late, and it was 'so decreed by the district judge. The supreme court, reversing the decree, speaking by Mr. Justice Bradley, says:

"He [the district judge] supposes that this right to contest the case on the merits at the same time and in the same proceedings that a limited liability is claimed implies that such proceedings must be instituted before the case has been tried on its merits, because a second trial of the same matter, after it has once been adjudicated, will not be deemed to have been contemplated by the rule. In supposing that a second trial of the merits between the same parties was not contemplated by the rule, the judge was correct. But it was certainly not the intention of the admiralty rules to preclude a party from claiming the benefit of a limited liability after a trial of the cause of collision. The fifty-sixth rule [13 Wall. xiii, 20 L. Ed. 926] was merely intended to relieve shipowners from the English rule of practice, which requires them, when they seek the benefit of the law of limited liability, to confess the ship to have been in fault in the collision. This was deemed to be a very onerous requirement; for in many, if not in most cases, it is extremely doubtful which vessel, if either, was in fault, and to require the owners of either to confess fault before allowing them to claim the benefit of the law would go far to deprive them of its benefit altogether. Hence this court, in preparing the rules of procedure for limitation of liability, deemed it proper to allow a party seeking such limitation to contest any liability whatever. But this rule of procedure was not intended to abrogate, and indeed, could not abrogate, the rule of law, that res judicata, or a matter once regularly decided between parties in a competent tribunal, cannot be again opened by either of them except in an appellate proceeding. Of course, therefore, the rule of procedure allowing a contestation of all liability is subordinate to this rule of law, and cannot apply where the question of general liability has already been adjudicated. Nor in such case can the proceedings for a limitation of liability prevent the due course of appeal in the primary cause of collision, though by the exercise of the court's authority they may prevent the parties from attempting, by execution or other process, to collect any moneys recovered by them beyond the amount awarded in the said proceedings. The amount recovered, whether before the limitation proceedings are commenced or afterwards, and whether in the court of first instance or an appellate court, will stand as the recoverer's basis for pro rata division when the condemned fund is distributed. In all other respects the proceedings for obtaining a limitation of liability may proceed in ordinary course."

The court further observed:

"But since the statute is imperative that, where a loss occurs in a vessel by embezzlement or by collision or other thing, without the privity or knowledge of the owner, his liability 'shall in no case exceed the amount or value of his interest in the vessel and her freight then pending,' it would be a questionable exercise, by this court, of its power to regulate the proceedings, if, by such regulation, it should prevent a party from having the benefit of the law unless he took initiatory steps for that purpose before it appeared that he was liable at all. * * * To require such proceedings to be commenced before a trial of the cause of collision would in many cases work injustice. In addition to the reasons already adverted to, it may be added that the owners of the vessel found in fault may often not know the amount of damage and loss sustained by the other vessel and her cargo. It may greatly exceed their expectations and, contrary to what was originally known or supposed, may turn out to be much greater than the value of their own vessel and the freight pending thereon. The institution of proceedings for a limitation of liability must, however, be subject to some limitations growing out of the nature of the case. They must be regarded as ineffectual as to any specific party if not undertaken until after such party

has obtained satisfaction of his demand. The doctrine of laches, as applied in admiralty courts, would be properly applicable to such a case. The court would justly refuse its aid in compelling a return of money received. Precisely when the owners of a ship in fault ought to be regarded as precluded from instituting proceedings for a limitation of liability might be difficult to state in a categorical manner. Perhaps they can never be precluded so long as any damage or loss remains unpaid. But in a particular case relief should not be granted except upon condition of compensating the other party for any costs and expenses he may have incurred by reason of the delay in claiming the benefit of the law."

This decision seems to us conclusive of the question here. It is said that that case is distinguishable from the one in hand because there the proceeding was in admiralty in the district court, while the one here was a common-law remedy sought in a state court. We think the distinction is unavailing. Whether the remedy resorted to be one in admiralty or at common law, the right to limitation under the statute is the same; and, while the right to a common-law remedy is reserved, it is so reserved subject to the provisions of the statute which sanctions proceedings for the limitation of liability. The appeal taken by the owners in the state court was properly resorted to in contestation of their liability, and to correct any supposed errors of the trial court. They had legal right to do that, and should be no more concluded by the exercise of that right than by the defense of the case in the trial court. The bond which they gave upon appeal was one which the law required them to give in order that they might properly and safely present their contention to the appellate court. We do not think that that should preclude them from asserting their rights under the statutes of the United States. But they could have earlier filed their petition to limit liability, and could then have contested all liability in the proceeding equally as well as in the trial court. This would have resulted in saving of time and expense. Their failure to do so put their opponent to disadvantage, and compelled him to an expenditure to which he ought not to have been subjected. The supreme court suggests in The Benefactor that "the flexibility of admiralty proceedings will enable the court in most cases so to shape their course as to attain justice between the parties." In view of the delay in presenting this petition, we think it only equitable that the appellees should have been required by the court below, as a condition of granting the relief demanded, in addition to the payment into court of the appraised value of the vessel, to pay the costs awarded to Gleason both in the trial court and upon appeal. Through failure in this respect the decree is erroneous. It is otherwise correct.

The decree will therefore be reversed, and the cause remanded to the court below, with direction to enter a decree in conformity with this opinion.